503 So.2d 570 (1987)
Kathleen RACHUBA
v.
Ronald HICKERSON, Allstate Insurance Company and Insurance Company of North America.
No. CA-5688.
Court of Appeal of Louisiana, Fourth Circuit.
February 12, 1987.
Ronald A. Welcker, Dennis J. Phayer, Glorioso, Welcker & Zaunbrecher, New Orleans, for plaintiff.
Steven B. Witman, Johnston & Duplass, New Orleans, for defendant.
*571 Before BARRY, KLEES and LOBRANO, JJ.
BARRY, Judge.
Kathleen Rachuba appeals a summary judgment which dismissed her personal injury suit due to the alleged tortfeasor's failure to timely renew his automobile insurance.
Rachuba argues the trial court erred because 1) Allstate failed to comply with the "time notice" requirement of La.R.S. 22:636.1, subd. A(5), 2) the notice was merely a qualified notice of Allstate's intent to cancel the policy, and 3) there are issues of material fact.
Rachuba, a pedestrian, attempted to cross St. Charles Ave. on October 14, 1984 and was struck by a vehicle driven by Ronald Hickerson. She sued Hickerson, his insurer, Allstate Insurance Co., and her uninsured motorist carrier, Insurance Company of North America.[1]
Allstate filed for summary judgment alleging its policy had lapsed prior to the accident. Allstate submitted the affidavit of Jean Jackson, manager of its Operations Department, who stated the policy had lapsed from October 1, 1984 to October 16, 1984. Attached to Allstate's first supplemental memorandum was an affidavit of Dean Benton, an Allstate mailroom employee, who declared the cancellation notice addressed to Hickerson was mailed September 18, 1984. The company's record of cancellation notices which were mailed on September 18, 1984 (and included Hickerson's name) was also submitted, along with the microfiche cancellation notice showing the October 1, 1984 cancellation date and the notice itself prepared from microfiche records.
Ms. Rachuba filed a memorandum in opposition, but no countervailing affidavits. Her exhibits included Hickerson's deposition and a copy of the declarations sheet of the Allstate policy which indicated the policy began on September 9, 1984 "with no fixed date of expiration."
According to Hickerson's deposition he purchased the policy in 1980 and renewed it at six month intervals. The premium and renewal notices were mailed to 826 Octavia Street, Hickerson's mother's address. He sent a check by March 9, 1984 and the next renewal payment was due September 9, 1984. During August and September Hickerson said he was in the process of moving and was short of cash. He did not remember receiving the renewal notice or a notice of cancellation, but stated he may have received them and forgot about the matter. He claimed that not until he spoke to his wife the day before the accident did he mail the premium check.
According to Allstate's affidavits its cancellation notice was mailed to Hickerson at 826 Octavia Street on September 18, 1984. The notice declared in large capital letters: "THE INSURANCE AFFORDED WILL STOP ON THE DATE AND TIME STATED ABOVE," which specified 12:01 a.m. on 10/1/84. In smaller capital letters next to URGENT was: "IF YOU DESIRE TO CONTINUE YOUR INSURANCE PROTECTION, RETURN THIS PART OF THE NOTICE WITH YOUR PAYMENT FOR THE AMOUNT SHOWN AS PAST DUE. IT MUST REACH US PRIOR TO THE DATE SHOWN BELOW." Although the notice also told the insured to see the reverse side for an important statutory notice, the reverse side is not in the record. Allstate received Hickerson's check on October 16, 1984 and reinstated coverage that date.
There is a strong public policy requiring prior notice to the insured of cancellation of an insurance policy in order to afford sufficient time to obtain other insurance. Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973); Cockern v. Government Employees Insurance Company, 415 So.2d 330 (La.App. 2d Cir.1982). The insurer must strictly comply with the notice statutorily required under La.R.S. 22:636.1. See Arceneaux v. Broussard, 319 So.2d 846 (La.App. 1st Cir. 1975).
*572 La.R.S. 22:636.1 provides in pertinent part:
A. As used in this chapter:
. . . . .
(5) `Renewal' or `to renew' means the issuance and delivery by an insurer of a policy replacing at the end of the policy period a policy previously issued and delivered by the same insurer, or the issuance and delivery of a certificate or notice extending the term of a policy beyond its policy period or term; provided, however, that any policy with a policy period or term of less than six months shall for the purpose of this chapter be considered as if written for a policy period or term of six months. In addition, any policy written for a term longer than one year or any policy with no fixed expiration date, shall for the purpose of this chapter, be considered as if written for successive policy periods or terms of one year, and such policy may be terminated at the expiration of any annual period upon giving twenty days notice of cancellation prior to such anniversary date, and such cancellation shall not be subject to any other provisions of this chapter.
(6) `Nonpayment of premium' means failure of the named insured to discharge when due any of his obligations in connection with payment of premiums on a policy, or any installment of such premium, whether the premium is payable directly to the insurer or its agent or indirectly under any premium finance play or extension of credit.
B. A notice of cancellation of a policy shall be effective only if it is based on one or more of the following reasons:
(1) Nonpayment of premium; or
D. No notice of cancellation of a policy to which Subsections B or C applies shall be effective unless mailed or delivered by the insurer to the named insured at least twenty days prior to the effective date of cancellation; provided, however, that where cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given. Unless the reason accompanies or is included in the notice of cancellation, the notice of cancellation shall state or be accompanied by a statement that upon written request of the named insured, mailed or delivered to the insurer not less than fifteen days prior to the effective date of cancellation, the insurer will specify the reason for such cancellation. This subsection shall not apply to nonrenewal.
E. No insurer shall fail to renew a policy unless it shall mail or deliver to the named insured, at the address shown in the policy, at least twenty days advance notice of its intention not to renew. This subsection shall not apply: (1) if the insurer has manifested its willingness to renew; or (2) in case of nonpayment of premium; provided that, notwithstanding the failure of an insurer to comply with this subsection, the policy shall terminate on the effective date of any other insurance policy with respect to any automobile designated in both policies.
Renewal of a policy shall not constitute a waiver or estoppel with respect to grounds for cancellation which existed before the effective date of such renewal.
F. Proof of mailing of notice of cancellation, or of intention not to renew or of reasons for cancellation, to the named insured at the address shown in the policy, shall be sufficient proof of notice.
Ms. Rachuba contends the notice purportedly sent to Hickerson failed to comply with R.S. 22:636.1 in form and content. Notice of intent to cancel for nonpayment is not the same as the notice of cancellation for nonpayment of a premium statutorily required under R.S. 22:636.1. Carroll v. State Farm Mutual Automobile Insurance Company, 419 So.2d 57 (La.App. 2d Cir.1982). In Dairyland Insurance Company v. Marks, 468 So.2d 841 (La.App. 1st Cir.1985), the First Circuit noted that a notice of intent to cancel is nothing more *573 than a demand for payment, whereas a notice of cancellation puts an insured on notice that the policy will be cancelled. The notice in that case read: "IMPORTANT: INSURANCE IS SUBJECT TO CANCELLATION IF PAYMENT IS NOT RECEIVED WITHIN TEN DAYS OF THIS NOTICE." The court held that language to be only a notice of intent and not sufficient to cancel.
The notice here was a clear notice of cancellation: "THE INSURANCE AFFORDED WILL STOP ON THE DATE AND TIME STATED ABOVE" which was 10/1/84 at 12:01 a.m. Hickerson was clearly put on notice that his coverage would terminate at the specified time. We are satisfied that the form and content of the notice conformed to the statute. See Alexander v. State Farm Mutual Automobile Insurance Company, 148 So.2d 898 (1st Cir.1962) (on rehearing).
Ms. Rachuba next argues La.R.S. 22:636.1A(5) requiring 20 days notice of cancellation prior to the anniversary date of the policy is applicable and Allstate did not comply. That subsection (located in the listing of the terms) defines "renewal" and states that a policy with no fixed expiration date is considered as if written for successive terms of one year. Thus, it can be terminated by giving 20 days notice prior to the anniversary date.
La.R.S. 22:636.1D also states the notice of cancellation under subsections B and C must be mailed at least 20 days prior to the effective date of cancellation. However, "where cancellation is for nonpayment of premium at least ten days notice of cancellation accompanied by the reason therefor shall be given." The same 20 day notice is required under subsection E if the insurer does not want to renew, but does not apply in the case of nonpayment of premium.
This case does not involve a nonrenewal. Allstate was willing to renew and in fact reinstated coverage upon receipt of the premium as of October 16, 1984. We are concerned with cancellation for nonpayment of a premium as defined in R.S. 22:636.1A(6). Under R.S. 22:636.1E(2) notice to renew (20 days) is not required in case of nonpayment of a premium. See Taylor v. MFA Mutual Insurance Company, 334 So.2d 402, 405, n. 3 (La.1976). When Hickerson failed to pay his premium due September 9, 1984, notice of cancellation was mailed more than 10 days prior to the effective date of cancellation under R.S. 22:636.1B and D. Allstate complied with the mandated 10 day notice if the notice was in fact mailed September 18, 1984 and the effective date of cancellation was October 1, 1984.
In order to successfully prove cancellation of the policy, the insurer must show the notice was actually mailed to the named insured. Robertson v. Travis, 393 So.2d 304 (La.App. 1st Cir.1980), writs refused 397 So.2d 805 and 806 (La.1981); Harang v. Sparacino, 257 So.2d 785 (La. App. 4th Cir.1971).
The affidavit of the individual making or supervising the mailing of the notice directed to the insured at his last known address (or that in the insurer's records) constitutes prima facie evidence of delivery of the notice of cancellation. See Boudreaux v. Ultramar Enterprises, Inc., 464 So.2d 851 (La.App. 5th Cir.1985), writ denied 468 So.2d 1206 (La.1985) (interpreting a similar requirement in R.S. 22:636). Proof of mailing creates a rebuttable presumption of receipt by the insured. Beasley v. Puglise, 454 So.2d 1125 (La.App. 4th Cir.1984), writ denied 460 So.2d 1044 (La.1984); Pincus v. Pumilia, 412 So.2d 151 (La.App. 4th Cir. 1982). It can be rebutted by proof of non-delivery. Boudreaux v. Ultramar Enterprises, Inc., supra.
Allstate produced the affidavit of Dean Benton who declared the notice of cancellation had been mailed September 18, 1984 to Hickerson at the only address the insurer had ever been given, 826 Octavia Street. The presumption of timely notice was created. Hickerson's deposition states he did not recall receiving a notice of renewal or cancellation. He had, however, received the six month renewal notice mailed to that address six months before and paid that premium.
*574 Hickerson never states he did not receive the notice or that the notice was not mailed. He admits it might have been sent, he might have read it and forgot about it. He was moving at the time and was short of cash. He explained that perhaps a phone call from his mother to his wife might have caused his wife to call him inquiring about the insurance coverage the day before the accident. The presumption was not rebutted by Hickerson, who never claimed non-delivery.
Summary judgment is available only when the pleadings, depositions and affidavits, if any, show there is no genuine issue as to a material fact and the mover, who bears the burden, is entitled to summary judgment by law. La.C.C.P. Art. 966; Perkins v. Battiste, 469 So.2d 27 (La.App. 1st Cir.1985).
The record convinces us that Allstate met its burden.
AFFIRMED.
NOTES
[1] Ms. Rachuba settled with Insurance Company of North America.