(NOT FOR PUBLICATION)

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

13-495

CLAYTON WALKER AND DANIELLE WALKER

VERSUS

JOE HEBERT, ET AL.

**********
APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, DOCKET NO. 2010-0637-B
HONORABLE JULES D. EDWARDS, III, DISTRICT JUDGE
**********

SYLVIA R. COOKS
JUDGE

**********

Court composed of Judges Sylvia R. Cooks, Marc T. Amy and Billy H. Ezell.

**AFFIRMED IN PART, AMENDED IN PART, RENDERED.**
**Amy, J., dissents and assigns reasons.**

Mark G. Artall
P.O. Box 53942
Lafayette, LA 70505
(337) 233-1777
**ATTORNEY FOR PLAINTIFF/APPELLEES**
**Clayton Walker and Danielle Walker**

Onebane Law Firm
Richard J. Petre, Jr.
P.O. Box 3507
Lafayette, LA 70502-3507
(337) 237-2660
**ATTORNEY FOR DEFENDANT/APELLANT**
**Essentia Insurance Company**

Dan Boudreaux
9100 Bluebonnet Centre Blvd., Suite 300
Baton Rouge, LA 70809
(225) 293-7272
**ATTORNEY FOR INTERVENOR/APPELLEE**
**Liberty Mutual Insurance Company**

**Cooks, Judge.**

## FACTS AND PROCEDURAL HISTORY

Clayton Walker (Plaintiff) was allegedly injured on September 22, 2009, when a vehicle driven by Joe Hebert (Joe), and owned by his brother, Donald Hebert (Donald), pinned Plaintiff between the vehicle and a building. Joe was insured with Essentia Insurance Company (Essentia) at the time of this accident on a policy covering his 1969 Chevrolet Camaro with an effective policy period of March 15, 2009 through March 15, 2010. Plaintiff sued Joe and Essentia among others. Essentia filed a Motion for Summary Judgment asserting an exclusion provision in the policy rendered Essentia free from any responsibility for damages suffered by Plaintiff.

The trial court denied Essentia's Motion for Summary Judgment finding the policy ambiguous as it contained provisions which both excluded and included coverage over non-owned vehicles being used by the insured. Essentia later filed a second Motion for Summary Judgment and a Motion for Partial Summary Judgment to which Plaintiffs filed Oppositions and a Cross Motion for Summary Judgment. The trial court again denied Essentia's Motions and granted Plaintiffs' Motion for Summary Judgment. The trial court specifically found "there was a policy in effect on the date of the accident" and the policy is "not against public policy." Essentia asserted that the policy had been cancelled with an effective date of cancellation of September 22, 2009, 12:01 A.M. The accident occurred on September 22, 2009, after 12:01 A.M. The trial court found the policy provides coverage in the amount of "$100,000.00 per person and $300,000.00 per accident." On the "Declarations" page of the policy coverage limits are set forth as: "A. Bodily Injury & Property Damage: $100,000.00 Per Accident [;] B. Medical

Payments: $1,000.00 Per Person Per Accident [;] and C. Uninsured Motorists Bodily Injury: $30,000.00 Per Accident." Essentia appeals the trial court judgment.

## LEGAL ANALYSIS

Under the provisions of La.Code Civ. P. art 966(B)(2), a party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." We review summary judgments de novo "under the same criteria that govern the district court's consideration of whether summary judgment is appropriate." *Dronet v. Safeway Ins. Co.*, 95-1471, p. 2 (La.App. 3 Cir. 11/7/97), 703 So.2d 97, 99, *citing Potter v. First Fed. Sav. & Loan Ass'n of Scotlandville*, 615 So.2d 318 (La. 1993). "A dispute as to the issue of whether, as a matter of law, the language in an insurance policy provides coverage to a party can properly be resolved within the context of a motion for summary judgment." *Id.*, citing *Domingue v. Reliance Ins. Co.*, 619 So.2d 1220 (La.App. 3 Cir. 1993).

Before we address the question of coverage we will address Essentia's argument that even if there is coverage under the policy, the policy was cancelled prior to the accident for which coverage is sought. Relying solely on its representations in its Admissions of Fact, Essentia asserts that on November 4, 2009, Joe signed a form cancelling his policy on his 1969 Camaro with a *retroactive* effective date of September 22, 2009, 12:01 A.M. Essentia asserts this came about through a series of events following the destruction by fire of Joe's Camaro on August 14, 2009. According to Essentia, Joe advised them after the destruction of his car "he would want to cancel his policy if he did not buy another classic car to replace the insured 1969 Chevrolet Camaro lost in the fire." They

2

further assert that on October 28, 2009, Joe informed them that as he had not yet bought any replacement car he wanted to cancel the policy. According to Essentia's Admission of Facts, Joe "signed the policy cancellation form showing September 22, 2009 at 12:01 a.m. as the cancellation date," and Essentia "received the cancellation form [on November 11, 2009] and cancelled the policy retroactive to September 22, 2009 at 12:01 a.m., the date on which Essentia and Mr. [Joe] Hebert settled the amount for loss on the insured 1969 Camaro…" The record does not contain a copy of this form. Be that as it may, if we accept Essentia's "admissions of fact" these facts do not establish that coverage was not in effect on September 22, 2009 when the accident injuring Plaintiff Walker occurred. Under these alleged facts Joe had not made a decision to cancel his insurance coverage when the accident involving Walker occurred, and did not come to that decision until just over a month later. Until then, the policy remained in effect as it was still within the original policy period. When the accident occurred on September 22, 2009, Walker and Joe had vested rights in the insurance policy which cannot be retroactively divested. This court has long recognized insurance policies cannot be canceled retroactively. *Ceasar v. New England Ins. Co.*, 616 So.2d 850 (La.App. 3 Cir. 1993). Additionally, Louisiana Revised Statutes 22:885(A) (emphasis added) provided in 2009 as follows:

> Cancellation by the insured of any policy which by its terms is cancellable at the insured's option or of any binder based on such policy may be effected by written notice thereof to the insurer and surrender of the policy or binder for cancellation *prior to or on the effective date of cancellation.* In event the policy or binder has been lost or destroyed and cannot be so surrendered, the insurer may in lieu of such surrender accept and in good faith rely upon the insured's written statement setting forth the fact of such loss or destruction.

As the statute provides that notice of cancellation by an insured must be *prior to or on* an effective date of cancellation, it is clear that the policy cannot be

3

canceled retroactively. By Essentia's own admission, Joe did not send written notice to cancel his policy until after the accident involving Plaintiff occurred, and not until after the "effective date" of cancellation recited in the notice. Likewise, the insurance policy covering Joe's classic Camaro expressly provides the manner in which the policy may be cancelled by the insured (emphasis added):

> Cancellation. This policy may be canceled during the policy period as follows:
>
> 1. The named insured shown in the Declarations may cancel by:
>
>    a. Returning this policy to us; or
>
>    b. *Giving us advance written notice of the date cancellation is to take effect.*

Under Essentia's own version of the facts regarding the insured's cancellation of the policy, Joe did not give any notice of cancellation prior to September 22, 2009, thus that date cannot be the date of cancellation as to do so runs afoul of both the contractual provisions of this insurance contract and the provisions of La.R.S. 22:885. We therefore hold, as did the trial court, the policy insuring Joe's Camaro was in effect on the date of Plaintiff's accident.

Next, we must determine whether the policy provides coverage for Joe while driving his brother's vehicle. Essentia asserts that the policy specifically excluded coverage for any liability "arising out of the ownership, maintenance, or use of any vehicle other than 'your covered auto.'" This provision appears in the basic policy under the heading "Part A. Liability Coverage. Exclusions." Plaintiffs assert the Essentia policy also contained an amendment of "Part A" of the policy expressly affecting policies issued to Louisiana residents. Our review of the record supports Plaintiffs' assertion. The Policy reads as follows: (emphasis added in italics)

4

*THIS ENDORSEMENT CHANGES THE POLICY.* PLEASE READ IT CAREFULLY.

STATE CONFORMANCE ENDORSEMENT – LOUISIANA

*The following amendment changes the policy* to conform with Louisiana state laws. Please read your entire policy for full details about your coverages.

    I.    PART A – LIABILITY COVERAGE

        A. *Paragraph A. of the Insuring Agreement is* **replaced** *by the following:*

INSURING AGREEMENT

*We will pay damages for "bodily injury" or "property damage" for which any "insured" becomes legally responsible because of an auto accident.* We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements.

[ ]

In addition to our limit of liability we will pay on behalf of an "insured":

Prejudgment interest awarded against the "insured" on that part of the judgment we pay.

We believe the above quoted policy language clearly provides coverage for this policy covering a Louisiana insured and as it plainly says, *replaces* paragraph (A) with a provision providing coverage under this policy for a Louisiana resident.

As our courts have repeatedly held:

When the words of an insurance contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent and courts must enforce the contract as written. *See*, LSA-C.C. art. 2046; *Hill v. Shelter Mutual Ins. Co.*, 05-1783 (La.7/10/06), 935 So.2d 691, 694; *Peterson v. Schimek*, 98-1712 (La.3/2/99), 729 So.2d 1024, 1028. Courts lack the authority to alter the terms of insurance contracts under the guise of contractual interpretation when the policy's provisions are couched in unambiguous terms. *Cadwallader v. Allstate Ins. Co.*, 02-1637 (La.6/27/03), 848 So.2d 577, 580; *Succession of Fannaly v. Lafayette Ins. Co.*, 01-1355 (La.1/15/02), 805 So.2d 1134, 1138. The rules of contractual interpretation simply do not authorize a perversion of the words or the exercise of inventive powers to create an ambiguity where none exists or the making of a new contract when the terms

express with sufficient clarity the parties' intent. *Edwards v. Daugherty*, 03-2103 (La.10/1/04), 883 So.2d 932, 941; *Succession of Fannaly*, 01-1355 at 4, 805 So.2d at 1138; *Peterson*, 98-1712 at 5, 729 So. 2d at 1029.

*Calcasieu Parish School Board v. Miller*, 11-1107 p. 4, (La.App. 3 Cir. 6/6/12), 92 So.3d 1200, 1203.

Plaintiffs assert the policy is ambiguous when one reads the provision in Paragraph 10 under "Exclusions" in the original policy and then reads the provision in the "State Conformance Endorsement." The trial judge found the policy ambiguous and held it must therefore be read to favor coverage. We find the policy is not ambiguous. By the express terms of the policy the Louisiana State Conformance Endorsement "[c]hanges the policy." This fact is set forth in the endorsement in all capital letters, presumably to emphasize the change in coverage. It is followed by the admonition to "read it carefully." Essentia would do well to follow its own instructions. The endorsement which effected changes in the policy clearly and unambiguously states "*We will pay damages for 'bodily injury' or 'property damage' for which any 'insured' becomes legally responsible because of an auto accident.*" Nothing could be plainer. We therefore find the policy clearly provides liability coverage for the accident involved herein should Joe, as its insured, be held liable to Plaintiff.

Additionally, we note, that under the "State Conformance Endorsement – Louisiana" provisions, the policy changed "Exclusion Provisions" regarding uninsured motorists coverage replacing the original policy language of Exclusion (B) 3, which provided "[w]e do not provide Uninsured Motorists Coverage for 'bodily injury' sustained by any 'insured': Using your 'covered auto' without a reasonable belief that that 'insured' is entitled to do so" to read, as amended:

A. We do not provide Uninsured Motorists Coverage for 'bodily injury' sustained by:

6

[ ]
a.  [A]ny 'insured' using: 'Your covered auto' without your express or implied permission; or

b.  Any vehicle, other than 'your covered auto', without the express or implied permission of the owner of such vehicle.

Essentia argues that such exclusions do not "provide" coverage. That statement may be true, but gets Essentia nowhere. While this exclusion does not itself "provide" coverage it certainly is consistent with provisions in the policy which demonstrate the policy does provide Uninsured Motorists Coverage. On the declarations page of the policy, the policy explicitly sets forth under the heading Liability Coverage, Part C., "Uninsured Motorists Bodily Injury: $30,000.00 Per Accident." Obviously the policy provides such coverage as amended by the Louisiana State Conformance Endorsement.

For the reasons as stated we affirm the trial court's ruling except to amend it regarding the limits of coverage. The policy clearly provides limits of coverage on the Declarations page which does not include the sum of $300,000.00 as mistakenly stated by the trial court in its ruling. We hereby amend the trial court judgment to correct this misstatement and decree the limits of liability of this policy are $100,000.00 bodily injury and property damage per accident; $1,000.00 medical payments per person per accident; and $30,000.00 uninsured motorists bodily injury per accident. All cost of these proceedings are assessed against Essentia.

**AFFIRMED IN PART, AMENDED IN PART, RENDERED**.

**Amy, J., dissents and assigns reasons.**

This opinion is **NOT DESIGNATED FOR PUBLICATION.** Uniform Rules – Courts of Appeal, Rule 2-16.3.

7

NUMBER 13-495

COURT OF APPEAL, THIRD CIRCUIT

STATE OF LOUISIANA

CLAYTON WALKER, ET AL.

VERSUS

JOE HEBERT, ET AL.

AMY, J., dissenting.

Although I agree with the majority that the record contains inadequate evidence of cancellation of the policy, I find that, on the merits of the parties' motions for summary judgment, the Essentia policy excluded coverage in this instance.

Namely, Exclusion Number 10 of the policy simply and plainly excludes liability coverage for an "insured" "[a]rising out of the ownership, maintenance, or use of any vehicle other than "'your covered auto'". It is unquestioned that, in this case, the insured was "using" a vehicle other than the automobile covered by the Essentia policy. In my opinion, the exclusion remains unchanged by reference to any subsequent endorsements applicable to Louisiana.

Neither do I see that Exclusion Number 8, as advanced by the plaintiffs, creates either coverage or ambiguity as to coverage. Instead, Exclusion Number 8 further excludes coverage for an accident involving a vehicle, other than "your covered auto" without the permission of that vehicle's owner. I do not see that this more discrete exception, which specifically addresses a situation in which permissive use is a question, can create ambiguity as to coverage in this instance since there is not a question in this case as to permissive use. Instead, it is Exclusion Number 10 which is directly applicable to this instance. That exception

broadly excludes coverage for the use of "any vehicle other than 'your covered auto.'"

For these reasons, I would vacate the summary judgment entered in favor of the plaintiffs and deny that motion. In turn, I would enter summary judgment in favor of the insurer.

Accordingly, I respectfully dissent from the majority opinion.